**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHRISTOPHER TAYLOR,

Plaintiff,

v.

WEXFORD MEDICAL,
MARYLAND CORRECTIONAL TRAINING CENTER,
DR. CONTAH NIMELY,
DONNIE GROSSNICKLE, *Nurse Manager*,
LORI COLE, *Nurse Manager*,
KELLY MURRAY, P.A.,
RICHARD SAMPONG, P.A.,
MATTHEW CARPENTER, P.A.,
KEVIN MCDONALD, P.A.,
DR. LAROZA,
P.A. JANINE, and
NURSE MANAGER BECKY,[1]

Defendants.

Civil Action No. TDC-15-2395

**MEMORANDUM OPINION**

Plaintiff Christopher Taylor, currently confined at Maryland Correctional Training Center ("MCTC"), is bilaterally hearing impaired, with profound hearing loss in his left ear and severe hearing loss in his right ear. Taylor has filed suit pursuant to 42 U.S.C. § 1983 ("§ 1983") against MCTC; Wexford Health Sources, Inc. ("Wexford"), the health services provider for MCTC; and individual Wexford medical staff asserting that they violated his constitutional rights

---

[1] Taylor incorrectly captions Defendant Wexford Health Sources, Inc. as "Wexford Medical" and Defendant Lora Cole, R.N. as "Lori Cole," and incompletely captions Defendant Janine Griffith, P.A. as "P.A. Janine" and Defendant Rebecca Barnhart, R.N. as "Nurse Manager Becky." The Court refers to these Defendants by their corrected or complete names and will instruct the Clerk to amend the case caption accordingly.

by failing adequately to treat his hearing loss, at times by failing to provide him with any hearing aids, and at other times by failing to provide him with hearing aids for both ears. MCTC has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Wexford and the individual medical staff defendants (collectively, "the Wexford Defendants") have also filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Those motions are now ripe for disposition, and no hearing is necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, MCTC's Motion is granted, and the Wexford Defendants' Motion is granted in part and denied in part.

## BACKGROUND

In June 2010, Taylor informed the MCTC medical provider, at that time a company other than Wexford, that he was essentially deaf in his left ear and hearing impaired in his right ear. He asked to be provided with hearing aids. In July 2010, Taylor was referred to an audiologist. Seven months later, in March 2011, he was fitted with a hearing aid for his right ear. In October 2011, Taylor was transferred from MCTC to Patuxent Institution ("Patuxent"). In approximately February 2012, Patuxent medical staff inadvertently broke Taylor's hearing aid while trying to clean it. Taylor made multiple unsuccessful requests to have the hearing aid replaced. Throughout this time period, Taylor also repeatedly requested a second hearing aid, for his left ear.

On May 22, 2012, after having no working hearing aid for at least three months, Taylor was transferred back to MCTC. Although his MCTC medical intake paperwork stated that he was hearing impaired and needed hearing aids, Taylor did not receive hearing aids upon his return. Taylor then began to make repeated requests for a replacement for his broken right

hearing aid, explaining that he could not hear announcements by correctional officers and was missing meals because he could not hear meal calls.

On July 1, 2012, Wexford became the MCTC medical services provider. On July 12, 2012, Taylor was seen by Wexford staff, who ordered a referral for an audiology consultation. On July 18, 2012, Defendant Dr. Contah Nimely examined Taylor and concluded that he had a bilateral hearing impairment, with the hearing loss more severe in his left ear than in his right. Taylor told Dr. Nimely that he had had no working hearing aid for several months and that he had difficulty communicating without hearing aids.

On October 3, 2012, Dr. Ross Cushing, an audiologist, examined Taylor. Dr. Cushing determined that Taylor's right hearing aid was damaged beyond repair and recommended authorization for a new one. On November 2, 2012, Taylor asked Defendant Janine Griffith, P.A. about the status of his hearing aids. On November 30, 2012, Dr. Nimely approved the issuance of one hearing aid to Taylor. He received that hearing aid on December 17, 2012. At Taylor's request, Dr. Cushing fitted the hearing aid for his left ear.

Beginning in February 2013, Taylor again began to ask about receiving a second hearing aid, based in part on his belief that the audiologist would be repairing and returning the damaged right hearing aid. On February 18, 2013, after Taylor asked Griffith about the second hearing aid, she consulted with "central consult coordinators," who informed her that Taylor would receive only one hearing aid. Wexford Mot. Dismiss Ex. 1 ("Wexford R.") at 21, ECF No. 27-1. On June 17, 2013, Taylor told Defendant Richard Sampong, P.A., during an examination, that he wanted his right hearing aid back and that he had difficulty hearing without the second aid. On August 21, 2013, medical personnel decided to consult with an audiologist to address the issue of Taylor's right hearing aid.

On December 11, 2013, Taylor was again seen by Dr. Cushing. When Taylor expressed his frustrations about not having two hearing aids, Dr. Cushing informed Taylor that only one hearing aid had been authorized. Nevertheless, Dr. Cushing recommended, "Consider giving inmate second hearing aid." Wexford R. at 30. On December 16, however, an update to Taylor's medical records instructed medical staff to "clarify" with Taylor that the Department of Corrections "only provides one aid." *Id.* at 31.

On March 30, 2014, Taylor reported problems with his single hearing aid. On April 5, 2014, Taylor told Griffith that the left hearing aid was not working even after a battery change. At a May 28, 2014 sick-call visit, Taylor informed medical staff that his left hearing aid was still not working and complained that he had not been allowed to use amplification devices that his family had sent because he had not had a working hearing aid for a long period of time. The following day, Defendant Lora Cole, R.N. cleaned the hearing aid and replaced the battery, but the aid still would not work. Cole told Taylor that an audiology consultation had been requested.

On June 5, 2014, Taylor attended a patient care conference with Cole, another medical staff member, the MCTC warden, and another prison representative. At that meeting, the Warden approved Taylor's use of the amplification devices sent by his family until Taylor's hearing aid was repaired, and the parties discussed the possibility of an expedited audiologist consultation. On June 18, 2014, Dr. Cushing met with Taylor and repaired his left hearing aid. Based on that same examination, Dr. Cushing stated in his report, "I recommend a second hearing aid for his right ear." Am. Compl. Ex. 1 at 2, ECF No. 4-1. Dr. Cushing also recommended that, although the devices provided to Taylor by his family did not provide adequate amplification, Taylor should be allowed to keep and use one of those devices. Dr. Cushing's June 2014 report, however, did not result in Taylor receiving a second hearing aid.

On March 26, 2015, when Taylor again began to report problems with his left hearing aid, Defendant Rebecca Barnhart, R.N. requested an audiology referral. On April 7, 2015, Defendant Kelly Murray, P.A. again ordered an audiology referral for Taylor. On May 8, 2015, Taylor again saw Barnhart to ask about the status of his audiology referral. Barnhart put in another request for a consultation. Finally, on July 2, 2015, Dr. Cushing saw Taylor and concluded that the left hearing aid was in complete disrepair and had to be replaced. On July 9, 2015, Taylor saw Defendant Matthew Carpenter, P.A. to ask about the status of his replacement hearing aid. In response, Carpenter requested another audiology consultation.

On August 7, 2015, Taylor filed his original Complaint in this case. A few days later, on August 13, 2015, Taylor received his replacement left hearing aid from Dr. Cushing. On September 3, 2015, Taylor reported to medical staff that his hearing aid was not functioning properly at work, where he is in close proximity to heavy machinery. On September 14, 2015, based on Taylor's report that he needed the settings on his hearing aid adjusted, Murray requested an audiology consultation. On December 9, 2015, Taylor was seen by Dr. Cushing, who adjusted the device. At that session, Taylor again requested a second hearing aid.

On March 3, 2016, Taylor reported that his hearing aid had again stopped working, and an audiology consultation was ordered. On April 26, 2016, Wexford was served with Taylor's Amended Complaint in this case. On May 19, 2016, Dr. Dolph Druckman, on behalf of Wexford, conducted a review of Taylor's file to "facilitate ongoing care for claim of hearing loss." Wexford R. at 65. After noting that Taylor had a February 2011 audiogram showing profound hearing loss in his left ear and severe hearing loss in his right ear, and that Taylor had repeatedly requested a working hearing aid as well as a second hearing aid, Dr. Druckman recommended that a new audiogram be conducted. He recommended against authorizing a

second hearing aid "[u]nless there is a current Audiological opinion (objectively based) that a second aid is necessary." *Id.*

The following day, on May 20, 2016, Dr. Cushing saw Taylor again and repaired the left hearing aid. In his report, Dr. Cushing noted that in addition to the February 2011 audiogram which had prompted the original issuance of a hearing aid, he had also performed an audiogram on Taylor in December 2012, when he had first fitted Taylor for a hearing aid, which revealed that Taylor's hearing loss was "more symmetrical." Wexford R. at 66. As part of his May 20, 2016 examination, Dr. Cushing performed a third audiogram, which showed "severe bilateral mixed hearing loss," results that were "consistent" with the 2012 test results. *Id.* Based on these test results, Dr. Cushing concluded that it was medically necessary for Taylor to have two hearing aids. Dr. Cushing fitted Taylor for his second hearing aid that same day.

**DISCUSSION**

On August 7, 2015, Taylor filed suit in this Court, naming only Wexford as a defendant. In that original Complaint, Taylor asserted that because he was provided only one hearing aid, and that hearing aid frequently malfunctioned and was not repaired or replaced in a timely manner, he has endured long periods of time when was "essentially deaf" in prison, which not only was "taxing both physically and mentally," but also placed him at "substantial risk." Compl. at 2-3, ECF No. 1. Specifically, he asserted that he was at risk of being subjected to violence because he could not hear, and thereby possibly avoid, other inmates' altercations. He noted that his prison job required him to be around heavy machinery and forklifts, an environment that was more dangerous when he could not hear safety horns or other alarms. He also noted that he had on several occasions missed meal calls or other correctional officer

announcements. Taylor further alleged that despite these risks, he was told that under its contract, Wexford was required to provide only one hearing aid.

On December 2, 2015, Taylor amended his Complaint to add MCTC and individual Wexford medical staff as defendants. Both MCTC and the Wexford Defendants now seek dismissal of, or summary judgment on, the Amended Complaint.

## I. Legal Standards

### A. Motion to Dismiss

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. MCTC

In its Motion, MCTC seeks dismissal because it is entitled to Eleventh Amendment immunity, it is not a proper party to suit under 42 U.S.C. § 1983, and Taylor failed to exhaust administrative remedies. Although MCTC's Eleventh Amendment argument would appear to implicate this Court's jurisdiction, *see Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (noting that "the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power"), the Court must turn first to the statutory argument that MCTC is not a "person" within the meaning of § 1983. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000) (finding that the question of whether a statute permits a cause of action against states should be addressed before the question of whether the Eleventh Amendment bars the cause of action); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (noting that pursuant to *Vermont Agency of Natural Resources*, the district court should have dismissed claims against state officials in their official capacities on the grounds that they were not persons within the meaning of § 1983 rather than on Eleventh Amendment grounds).

Section 1983 makes liable "[e]very person" who, under color of state law, deprives an individual of constitutional rights. 42 U.S.C. § 1983. State agencies are not persons within the meaning of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because MCTC is a unit of the State of Maryland operated by the Maryland Department of Public Safety and Correctional Services, it is not a person amenable to suit under § 1983. *See Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (holding that the Maryland Department of Public Safety and Correctional Services is not amenable to suit under § 1983); *Allison v. Cal. Adult Auth.*, 419 F.2d 822, 822-23 (9th Cir. 1969) (holding that a state prison is not a person under § 1983). Taylor's claim against MCTC is therefore dismissed with prejudice. *See U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F. 3d 312, 320 (4th Cir. 2010) (stating that when any alteration to a cause of action would be "futile" and have "no impact on the outcome of the motion to dismiss," the district court need not grant leave to amend).

Accordingly, the Court need not, and thus does not, address MCTC's alternative arguments for dismissal.

**III. The Wexford Defendants**

In their Motion, the Wexford Defendants assert that (1) Taylor's claims are barred in part by the statute of limitations; (2) the claims against Defendants Donnie Grossnickle, R.N., Kevin McDonald, P.A., and Dr. Laroza must be dismissed because Taylor makes no allegations against those individuals; (3) the claims against Wexford must be dismissed because Wexford is not subject to suit under § 1983; and (4) all of Taylor's claims fail because Taylor has failed adequately to allege or, if his medical records are considered, is unable to establish that the Wexford Defendants' treatment of his hearing loss violated his rights under the Eighth Amendment to the United States Constitution.

**A. Statute of Limitations**

The Wexford Defendants assert that any claims arising more than three years before the filing of the Complaint on August 7, 2015 are barred by the statute of limitations. Because § 1983 does not contain its own statute of limitations, courts must draw from the most analogous state law cause of action to determine the appropriate statute of limitations. *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Maryland law provides a general three-year limitations period for civil actions. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2015). Thus, the Wexford Defendants are correct that to the extent that Taylor asserts claims based on events prior to August 7, 2012, those claims would be barred by the statute of limitations. However, this limitation has only a minor impact on Taylor's claims because Wexford became the MCTC medical provider on July 1, 2012, leaving only five weeks of medical treatment outside the scope of this lawsuit. Moreover, the Court notes that events pre-dating August 7, 2012 may constitute background evidence on claims arising after that date. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (noting, in the context of an employment discrimination claim, that unlawful acts that cannot be the basis for suit because they are outside the statute of limitations may still be used "as background evidence in support of a timely claim").

**B. Individual Defendants**

Although Taylor has named Grossnickle, McDonald, and Laroza as defendants, he nowhere names those individuals in his allegations, nor do they appear in any of the medical records submitted by either side. Because there is no apparent factual basis for Taylor's claims against Grossnickle, McDonald, or Laroza, those defendants will be dismissed. *See Iqbal*, 556

U.S. at 678 (stating that a claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

**C. Wexford**

Wexford seeks dismissal because, as a private corporation carrying out a governmental function such as the delivery of medical care in a prison setting, Wexford may be sued under § 1983 only if the alleged constitutional deprivation results from a policy, custom, or practice of the entity, a requirement it alleges has not been met. *See Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 690 (1978). However, Taylor has alleged such a policy by asserting that "I was told that Wexford's contract mandates that they are only obligated to provide one device." Compl. at 2. Thus, dismissal is not warranted.

Even if the Motion is construed as seeking summary judgment based on the submitted evidence, the medical records, particularly a notation made on February 18, 2013 that "central consult coordinators . . . advised that only 1 hearing aid will be repaired/replaced" and another notation made on December 16, 2013 that "DOC only provides one aid," support the inference that Wexford had a policy of providing only one hearing aid to an inmate, and that the policy was followed in Taylor's case, even after a second hearing aid was expressly recommended by the audiologist. Wexford R. at 21, 31. Thus, based on Taylor's allegations and the record on this Motion, Wexford is properly subject to suit under § 1983.

**D. Eighth Amendment**

The Wexford Defendants also contend that Taylor has not asserted a viable claim that the denial of hearing aids violated his Eighth Amendment rights. Because both parties have submitted evidence on this issue for the Court's review, this aspect of the Wexford Defendants' Motion is construed as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An inmate's Eighth Amendment rights are violated when there is "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A deliberate indifference claim has both an objective component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety—and a subjective component—that the official subjectively knew of the condition and risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1978) (holding that an official must have "knowledge" of a risk of harm, which must be an "objectively, sufficiently serious").

To be objectively "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted). However, deliberate indifference "does not require proof that the plaintiff suffered an actual injury." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017). Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

(citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.*

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980) (holding that, *inter alia*, a prison's alleged failure to give an inmate a wheelchair after he suffered a back injury was sufficient to support an Eighth Amendment claim); *Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" contributed to an Eighth Amendment claim). A number of courts, including the United States Court of Appeals for the Fourth Circuit, have held that hearing aids fall within the category of corrective devices the deprivation of which could give rise to an Eighth Amendment claim. *See Large v. Washington Cty. Det. Ctr.*, 915 F.2d 1564 at * 2 (4th Cir. 1990) (unpublished table decision) (holding that "under appropriate circumstances, the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need"); *Gilmore v. Hodges*, 738 F.3d 266, 275-76 (11th Cir. 2013) (holding that the denial of a hearing aid to an inmate could form the basis of an Eighth Amendment claim because "[t]he ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly requires medical treatment by a physician"); *Cooper v. Johnson*, 255 F. App'x 891, 892 (5th Cir. 2007) (unpublished) (holding that a prisoner who suffered from tinnitus

that was treatable with a hearing aid had adequately pleaded an Eighth Amendment claim when he was denied a hearing aid based on the prison's policy of not providing one if the inmate could hear out of one ear); *Wheeler v. Butler*, 209 F. App'x 14, 15 (2d Cir. 2006) (unpublished) (holding that where a prisoner alleged that he had a severe hearing impairment that had been classified by the prison as a physical handicap, and the prison had confiscated and never returned his hearing aids, the district court erred in granting summary judgment to defendants on the prisoner's Eighth Amendment claim).

Because an Eighth Amendment claim based on the deprivation of a hearing aid is a viable legal theory, the question is whether the present record establishes as a matter of law that the Wexford Defendants were not deliberately indifferent to Taylor's serious medical need such that they would be entitled to summary judgment. As to whether Taylor had a serious medical need, there is no dispute that the Wexford Defendants were aware that Taylor had been diagnosed with profound hearing loss in his left ear and severe hearing loss in his right ear, and that his hearing loss mandated treatment. *See Gilmore*, 738 F.3d at 275 (stating that "[s]ubstantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need"). What is disputed is whether the Wexford Defendants' treatment of Taylor's serious medical condition could be deemed deliberately indifferent.

The Wexford Defendants argue that the medical records show that Taylor was provided with regular care for his hearing loss, such that Taylor's claim stems either from his disagreement with the course of treatment Wexford provided or, at worst, from Wexford's negligence. *See Jackson*, 775 F.3d at 178 (stating that neither a disagreement between an inmate and a physician over proper medical care nor medical-staff negligence is sufficient to show deliberate indifference). However, when viewed in the light most favorable to Taylor, the record

can be read to show that the Wexford Defendants systematically delayed and denied Taylor adequate treatment for his hearing loss and were thus deliberately indifferent to that medical need.

As to delays in treatment, the record of Taylor's medical visits reveals that his requests for replacement of, or repairs to, his only hearing aid were regularly followed by months-long inaction. Upon his return to MCTC in 2012, Taylor had to wait over seven months before receiving a working hearing aid—six of those months under Wexford's watch—leaving him entirely without any medically necessary hearing assistance as he sought to reintegrate into the MCTC prison environment. In 2014, Taylor reported on March 31 that his hearing aid had stopped working and did not receive a replacement until June 18, nearly three months later. In 2015, Taylor had two extended periods with no working hearing aid. Taylor reported a problem with his hearing aid on March 26, 2015, which was not addressed by the audiologist until July 2, 2015, when the hearing aid was found to be beyond repair. Taylor did not receive a new hearing aid until August 13, 2015, over four months after his initial complaint. Then on September 3, 2015, Taylor informed medical staff that his hearing aid was malfunctioning when he was around the heavy machinery at his prison job. It was not until December 9, 2016, three months later, that his hearing aid was adjusted to enable him to use it at work.

Construed in Taylor's favor, the record suggests that Taylor has spent over a year at MCTC without a functional hearing aid as a result of delays in repairing or replacing his only hearing aid, even though the Wexford Defendants were well aware that a hearing aid was, for Taylor, a medical necessity. Indeed, the lack of a functioning hearing aid placed Taylor at a substantial risk of harm. *See Gilmore*, 738 F.3d at 276 (noting that "an inmate's inability to hear may render him exceedingly vulnerable to danger and harm from his unperceived surroundings"

and that "untreated hearing loss could do serious harm to physical and mental health"). Such individually extended and cumulatively remarkable delays are a sufficient basis, at this early stage of the litigation, to allow Taylor's Eighth Amendment claim to proceed. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (holding that because deliberate indifference can take the "form of delay or interference with treatment once prescribed," the district court had improperly dismissed a prisoner's Eighth Amendment claim based on his allegation of a 15-day delay in receiving treatment for a foot infection); *see also Heyer*, 849 F.3d at 211 ("[T]he mere fact that prison officials provide some treatment does not mean they have provided *constitutionally adequate* treatment."). Nor, in light of the pattern over several years, can the Court at this point conclude that such delays can be attributed to mere negligence. Discovery may reveal that the length of these delays in providing a working hearing aid were, relative to Taylor's disability and its consequences, not inordinate. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."). It may establish that the delays were not attributable to the Wexford Defendants. However, as the factual record stands now, it reveals only that there were substantial delays, not their causes or consequences. Summary judgment in the Wexford Defendants' favor at this time would therefore be inappropriate.

As for denial of treatment, there is evidence that Wexford did not merely pursue a treatment plan with which Taylor disagreed—providing him with only one hearing aid—but that it pursued a treatment plan at odds with the medical recommendation of its own audiologist, Dr. Cushing. In December 2013, Dr. Cushing suggested that Taylor receive a second hearing aid, but it was not provided. In June 2014, Dr. Cushing repeated the recommendation, which again

went unheeded. Not until May 2016, after the Wexford Defendants had been served with the Amended Complaint, was Dr. Cushing's recommendation implemented. Notably, Dr. Cushing remarked that Taylor's May 2016 audiology results, which indicated that two hearing aids were a medical necessity, were consistent with Taylor's test results from December 2012, almost four years earlier. Thus, when the facts are viewed in the light most favorable to Taylor, there is evidence to support the conclusion that the Wexford Defendants failed to provide a second hearing aid known to be medically necessary for several years, dating back at least to June 2014, when Dr. Cushing made the express recommendation for it, and possibly back to the December 2012 audiogram. Such evidence could potentially support an Eighth Amendment claim. *See Gilmore*, 738 F.3d at 275-76; *Large*, 915 F.2d 1564 at * 1.

There is also evidence that the Wexford Defendants' failure to follow Dr. Cushing's recommendation was the result not of a competing assessment of medical necessity, but of a blanket policy against providing more than one hearing aid to an inmate. On two occasions, in February 2013 and December 2013, medical staff advised that only one hearing aid would be provided, once referencing the Department of Corrections as the source of that rule. Such a policy, apparently based on the premise that an inmate who can hear out of one ear has no medical need to hear out of the second ear, could also implicate Eighth Amendment concerns. *Cf. Cooper*, 255 F. App'x at 891-92 (holding that the district court erred in dismissing an Eighth Amendment claim based on the denial of a hearing aid pursuant to a state policy against providing one to an inmate who can hear out of one ear). It may be that discovery will establish that Taylor's need for a second hearing aid was not "serious" within the meaning of the Eighth Amendment, or that the Wexford Defendants' failure to provide him with a second hearing aid occurred under circumstances that do not amount to deliberate indifference. But because such

determinations cannot be made on the present record, the Wexford Defendants' Motion for Summary Judgment is denied.

**CONCLUSION**

For the foregoing reasons, MCTC's Motion is granted, and the claims against MCTC are dismissed with prejudice. The Wexford Defendants' Motion is granted as to the claims against Donnie Grossnickle, Kevin McDonald, and Dr. Laroza, all of whom are dismissed as defendants. The Wexford Defendants' Motion is denied in all other respects. Now that this case will proceed to discovery, Taylor may renew his Motion to Appoint Counsel. *See* Mots. Appoint Counsel, ECF No. 5, 17, & 22; Order Denying Mots. Appoint Counsel, ECF No. 30. A separate Order shall issue.

Date: March 30, 2017

THEODORE D. CHUANG
United States District Judge